# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-01528-SBP

P.Z.,

      Plaintiff,

v.

MARTIN J. O'MALLEY, Commissioner of Social Security,[1]

      Defendant.

---

## OPINION AND ORDER

---

**Susan Prose, United States Magistrate Judge**

      This civil action arises under Title II, 42 U.S.C. § 401 *et seq.,* and Title XVI, 42 U.S.C. § 1381 *et seq.,* of the Social Security Act (the "Act"), for review of the Commissioner of Social Security's (the "Commissioner") final administrative decision denying Plaintiff's claim for disability insurance benefits ("DIB") and supplemental security income ("SSI"). After consideration of the briefs and the record, this court affirms the Commissioner's decision for the reasons set forth in this Order.

## I. Background

      Plaintiff filed for DIB and SSI on March 18, 2020, claiming disability beginning January

---

[1] Martin J. O'Malley is now the Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d). An action under 42 U.S.C. § 405(g) survives regardless of any change in the person occupying the office of the Commissioner of Social Security.

1, 2018. ECF No. 11-2 at 12.[2] Following a hearing, Plaintiff's disability claim was denied in a decision dated December 22, 2021. *Id*. at 12-25. The Appeals Council denied Plaintiff's request for review of the ALJ's decision, *id*. at 1-3, thereby rendering the ALJ's December 22, 2021 decision final and subject to judicial review. Jurisdiction is proper under 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II. The ALJ Decision

In her December 22, 2021 decision, the ALJ applied the five-step sequential process outlined in 20 C.F.R. §§ 404.1520(a) and 416.920(a). At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since his alleged onset disability date of January 1, 2018. ECF No. 11-2 at 15.

At step two, the ALJ found that Plaintiff had severe impairments of "degenerative disc disease of the cervical spine, osteoarthritis of the bilateral knees, and osteoarthritis of the left ankle with history of open reduction/internal fixation ("ORIF")." *Id*. The ALJ considered several other alleged impairments as part of her step two analysis, including limitations in the use of Plaintiff's hands; right wrist and back pain; and migraines. *Id*. at 15-17. The ALJ concluded that Plaintiff's impairments due to limitations in the use of his hands and from pain in his right wrist and back imposed no more than a minimal effect on his ability to perform basic work activities and that Plaintiff had no medically determinable impairment related to migraines. *Id*.

At step three, The ALJ concluded that Plaintiff did not have an impairment or a

---

[2] When citing to the Administrative Record, the court utilizes the docket number assigned by the court's Case Management/Electronic Case Files ("CM/ECF") system and the page number associated with the AR, found in the bottom right-hand corner of the page. For all other documents, the court cites to the document and page number generated by the CM/ECF system.

combination of impairments that met or medically equaled one of the listed impairments in the disability regulations. *Id*. at 17. The ALJ next determined that Plaintiff had the residual functional capacity ("RFC") to perform "medium" work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c) with the following limitations:

> [Plaintiff] can occasionally climb ladders, ropes, or scaffolds and can frequently climb ramps or stairs, balance, stoop, kneel, crouch, and crawl. He can frequently handle, finger, and feel with the right upper extremity. He can tolerate occasional exposure to hazards such as unprotected heights and heavy mechanical machinery (like a jackhammer or tractor).

*Id*. at 17-18.

At step four, the ALJ found that Plaintiff is unable to perform his past relevant work in a composite job comprised of prep cook and dishwasher and as an electrician helper. *Id*. at 23. At step five, the ALJ found that, considering Plaintiff's age, education, work experience, and RFC, there are jobs existing in significant numbers in the national economy that Plaintiff is capable of performing, such as laundry worker, bagger, and warehouse worker. *Id*. at 23-4. The ALJ therefore concluded that Plaintiff had not been under a disability from his alleged disability onset date of January 1, 2018, through the date of the ALJ's decision. *Id*. at 24.

### III. Standard of Review

In reviewing the Commissioner's decision, this court "is limited to determining whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1175 (10th Cir. 2014). "The phrase 'substantial evidence' is a 'term of art,' used throughout administrative law to describe how courts are to review agency factfinding." *Biestek v. Berryhill*, 587 U.S. ---, 139 S. Ct. 1148, 1154 (2019) (quoting *T-Mobile South, LLC v. Roswell*, 547 U.S. 293, 301

(2015)). In applying the substantial-evidence standard,

> a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations. And whatever the meaning of "substantial" in other contacts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Id.* (cleaned up). *See also Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004) ("Substantial evidence requires more than a scintilla but less than a preponderance.") (quoting *U.S. Cellular Tel., L.L.C., v. City of Broken Arrow, Okla.*, 340 F.3d 1122, 1133 (10th Cir. 2003)). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Zoltanski*, 372 F.3d at 1200 (quoting *U.S. Cellular*, 340 F.3d at 1133).

This court "may neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Knight,* 756 F.3d at 1175 (citation omitted). *See also Zoltanski*, 372 F.3d at 1200 (the court may not displace the Commissioner's choice between two fairly conflicting views, even if the court would have made a different choice if the matter had been before it de novo).

## IV. Analysis

Plaintiff argues that the ALJ erred (1) by failing to include that he required a cane in his RFC; (2) by failing to address the combined effect of all of his impairments; (3) by discrediting the opinions of all examining and treating physicians; (4) by failing to provide clear and convincing reasons for discrediting Plaintiff's testimony; and (5) by not meeting the Commissioner's burden of proof at step five of the sequential process.

4

**A. Plaintiff's Alleged Need for a Cane**

Plaintiff's argument that the ALJ erred in failing to include that he required the use of a cane in his RFC is partly predicated on evidence relating to the condition of Plaintiff's left leg and ankle. *See, e.g.*, ECF No. 11-7 at 480 (noting that Plaintiff has left ankle and knee pain with decreased range of motion in his left ankle). For a hand-held assistive device such as a cane to be "medically required," however, "there must be medical documentation establishing the need for [such] device to aid in walking or standing, and describing the circumstances for which it is needed . . . ." SSR 96-9p, 1996 WL 374185, at * 7.

There is some documentation in the record reflecting Plaintiff's use of a cane. *See* ECF No. 11-7 at 504 (Plaintiff's self-reporting that he needs a cane to ambulate during September 2020 telehealth appointment). Medical documentation that Plaintiff *requires* a cane under specific circumstances, however, is lacking. Though Plaintiff cites the opinion of consultative examiner Kerry Kamer, DO, as supportive of such a requirement, Dr. Kamer's functional assessment states only that "[Plaintiff's] use of a cane for additional stability over most distances *may be medically reasonable* based on exam findings." ECF No. 11-7 at 496 (emphasis added). Dr. Kamer also noted that Plaintiff had only a "slight gait disturbance" and exhibited "slight use" of a cane brought to his consultative exam "for stability [with] no off-weighting noted," *id*. at 493, further undermining Plaintiff's assertion that he required the use of a cane.

In the absence of medical documentation supporting that a cane was medically required by Plaintiff, the ALJ's omission of such a limitation in Plaintiff's RFC is supported by substantial evidence and not in error.

5

**B. The ALJ's Consideration of Plaintiff's Impairments**

In assessing a claimant's RFC, "the ALJ must consider the combined effect of all of the claimant's medically determinable impairments, *whether severe or not severe.*" *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013) (emphasis in original).

Plaintiff argues that the ALJ erred by not properly addressing his use of a cane, right-hand grip limitations, migraines, and pain. Each of these alleged impairments, however, was in fact addressed by the ALJ throughout the decision. *See* ECF No. 11-2 at 15 (addressing loss of right-hand grip strength and wrist pain at step two of analysis); 16 (noting infrequent complaints of back and rib pain at step two of analysis); 17 (finding no medically determinable impairment related to Plaintiff's alleged migraines at step two of analysis); 18 & 21 (discussing Plaintiff's use of a cane); & 19-20 (discussing Plaintiff's left leg, ankle, and neck pain). Plaintiff's assertion that the ALJ did not include any hand limitations in his RFC is also patently incorrect since the ALJ limited him to frequently handling, fingering, and feeling with his upper right extremity. *Id*. at 18.

Furthermore, the ALJ recognized her obligation to consider both severe and non-severe impairments in assessing Plaintiff's RFC and noted that she did so. *Id*. at 14, 17, & 18. There is no basis to conclude that the ALJ should not be taken at her word in this regard. *See Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2007) (recognizing general practice to take a lower tribunal at its word when it declares that it has considered a matter in context of ALJ's statement that he considered all the claimant's symptoms). The ALJ therefore properly considered all of Plaintiff's alleged impairments.

**C. The ALJ's Treatment of the Medical Opinions**

Plaintiff argues in conclusory fashion that the ALJ erred by discrediting the opinions of all treating and examining physicians. This court disagrees.

As noted by Plaintiff, the most important factors in evaluating the persuasiveness of medical opinions are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). The ALJ here indicated how persuasive she found each medical opinion and discussed evidence in the record that failed to support, or was inconsistent with, that opinion. *See* ECF No. 11-2 at 21 (finding the opinions of Drs. Kamer and Holtgrewe only "somewhat persuasive" because certain limitations were not supported by Dr. Kamer's largely normal exam findings) & 21-22 (finding the medical opinions of Drs. Victory, Spence, and Appel unpersuasive because they were inconsistent with relatively infrequent and sporadic treatment, largely benign physical exams, reports of generally intact daily activities and abilities, and limited use of a cane). The ALJ therefore properly considered the medical opinions of Plaintiff's treating and examining physicians. *See* 20 C.F.R. § 404.1520c(b)

"The ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004). Thus, "there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012). Plaintiff's argument that the ALJ's RFC assessment cannot be supported by substantial evidence in the absence of a direct correlation to medical opinions in the record is without merit.

**D. The ALJ's Analysis of Plaintiff's Credibility**

Plaintiff argues that the ALJ erred by failing to adequately support her findings regarding Plaintiff's credibility. In analyzing this argument, this court is mindful that, "[c]redibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005).

In support of her finding that the evidence in the record failed to support Plaintiff's statements about the severity of his symptoms and limitations, the ALJ noted Plaintiff's own inconsistent statements in his Function Reports and hearing testimony that he was able to perform household chores; walk and use public transportation to get around; shop in stores with assistance, attend church two to three times per week; read daily; care for his mother by cooking, doing dishes, and administering her medications; found some relief from his pain medications; and did not use anything to help him walk. *Id.* at 18-19. The ALJ also discussed the medical evidence in the record in detail with citation to the record and reasonably found that it documented relatively infrequent and sporadic treatment, largely benign physical exams, reports of generally intact daily activities and abilities, and limited use of a cane. *Id.* at 19-21.

The factors the ALJ considered in assessing Plaintiff's credibility were appropriate, s*ee* 20 C.F.R. § 404.1529(c)(3) (listing factors considered in evaluating intensity and persistence of symptoms to include daily activities and treatment received), and adequately supported the ALJ's finding that the evidence in the record did not support Plaintiff's statements about the severity of his symptoms and limitations. Moreover, Plaintiff fails to provide any citations or well-reasoned argument to contradict the ALJ's credibility assessment. This court therefore

concludes that the ALJ's analysis of Plaintiff's credibility utilized the correct legal standards and is supported by substantial evidence.

**E. The ALJ's Step-Five Analysis**

Plaintiff argues that the ALJ erred at step five of her analysis by "failing to apply the Medical Vocational Profiles using the proper categories" and because the medium work jobs the ALJ identified for Plaintiff conflict with his hand and leg limitations. In response, the Commissioner argues that, despite how Plaintiff has couched these arguments, he is in fact again arguing that the ALJ should have incorporated additional limitations into Plaintiff's RFC. This court agrees with the Commissioner's characterization of Plaintiff's step-five arguments and concludes that they are without merit based on the same reasoning previously set forth in this Order.

Specifically, Plaintiff argues that the ALJ's findings that he was capable of performing medium work and jobs requiring frequent handling, fingering, and feeling with his right hand are inconsistent with evidence in the record that he has difficulty using his right hand and requires the use of a cane. This court has already concluded that the ALJ's omission of a limitation based on Plaintiff alleged need for a cane is supported by substantial evidence and not in error. The court has also already concluded that the ALJ did not err in assessing Plaintiff's credibility or in analyzing the medical opinions in the record with respect to Plaintiff's other limitations.

**F. "Credit-as-True" Doctrine**

Plaintiff argues that the "credit-as-true" doctrine set forth in Ninth Circuit case law warrants a finding of disability and award of benefits in lieu of remand in this case. Under this doctrine:

> [W]here there are no outstanding issues that must be resolved before a proper disability determination can be made, and where it is clear from the administrative record that the ALJ would be required to award benefits if the claimant's excess pain testimony were credited, we will not remand solely to allow the ALJ to make specific findings regarding that testimony. Rather, we will . . . take that testimony to be established as true.

*Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1401 (9th Cir. 1988).

As noted by the Commissioner, the Tenth Circuit has not adopted the "credit-as-true" doctrine. *See Stewart v. Colvin*, 640 F. App'x, 777, 779 n.1 (10th Cir. 2016) ("Because our precedent is clear on this point, we reject [plaintiff's] invitation to apply the Ninth Circuit's 'credit-as-true' rule, which allows a court to credit evidence as true and remand for an immediate award of benefits when certain conditions . . . are met."). Moreover, this court has found no error in the ALJ's analysis of Plaintiff's credibility or in the other areas where Plaintiff alleges error. The "credit-as-true" doctrine therefore is inapplicable to this case.

### V. Conclusion

For the reasons set forth above, IT IS HEREBY ORDERED that the Commissioner's decision is AFFIRMED. Judgment shall enter accordingly.

Dated: May 23, 2024

BY THE COURT:

_____
Susan Prose
United States Magistrate Judge